Rafael RAMOS, et al., Plaintiffs, Appellants,

v.

DAVIS & GECK, INC., et al., Defendants, Appellees.

Rafael Ramos, et al., Plaintiffs, Appellees,

v.

Davis & Geck, Inc., et al. Defendants, Appellants.

Nos. 97–2093, 97–2094.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1998.

Decided Feb. 18, 1999.

José Luis Ubarri with whom Herbert W. Brown, III and David W. Román and Brown & Ubarri were on brief for plaintiff, appellant Rafael Ramos.

Pedro J. Manzano–Yates with whom Fiddler González & Rodríguez were on brief for defendant, appellee Davis & Geck, Inc.

Before LYNCH, Circuit Judge, CYR, Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

Defendant-appellant Davis & Geck, Inc. appeals from a jury verdict finding that Davis & Geck constructively discharged Rafael Ramos in violation of Puerto Rico's employment discrimination statute (Law 100), P.R. Laws Ann. tit. 29, § 146 et seq. Ramos cross appeals, alleging error in the district court's (1) refusal to award front pay, (2) calculation of attorney's fees, and (3) denial of pre-judgment interest. We affirm.

I.

The jury could have found the following facts. See Rodriguez–Hernandez v. Miranda–Velez, 132 F.3d 848, 851 (1st Cir.1998) ("We review the facts in the light most favorable to the jury's verdict."). Ramos began working in the accounting department of Davis & Geck's manufacturing plant in Manati, Puerto Rico in 1974. In 1980, he was promoted to budget supervisor of the accounting section. In June 1991, Davis & Geck hired Francisco Rosaly as its cost accounting manager; Rosaly became Ramos' supervisor. Rosaly made several comments to Ramos and others about wanting "to get rid of old things" and "to bring in new blood" and that he, Rosaly, wanted "to change everything that was old."

On March 16, 1992, Ramos (53 years old at the time) was informed by Rosaly and Hazel Barry, the plant's controller, that he was being replaced as budget supervisor by Maritza Montalvo, a younger woman whom Ramos had recently trained. Ramos' pay and benefits were not changed. Ramos was told that the decision had been made and he could "take it or leave it."

After the meeting with Rosaly and Barry, Ramos began a previously scheduled, mandatory vacation period. (Ramos, along with other employees, had been ordered to take vacation because he had accrued substantial leave without taking a vacation.) When certain reports were requested of Ramos, however, he returned to work during his vacation to prepare the reports. One evening between 9:30 and 10:00 p.m., Davis & Geck's computer system "went down." When Ramos explained that he could therefore not finish the report, Rosaly stood behind Ramos and told him to go home because he, Ramos, was "a tired old man."

When Ramos returned from his vacation in April 1992, his office assignment had been changed. Montalvo was in Ramos' former cubicle, and Ramos had been transferred to "the death cubicle," so named because all employees who had been assigned to it left the company. In his new cubicle, Ramos found his personal belongings in a box on the floor and an obsolete, non-working computer on his desk.

Rosaly immediately demanded certain reports from Ramos. Ramos claimed that he was unable to produce the reports as a result of his inoperative computer. Rosaly instructed Ramos to use another computer, but Ramos said that all the computers were in use.

On April 21, 1992, Rosaly again demanded the reports. Ramos again told Rosaly that he had been unable to complete the reports because his computer was still not working and no other computer had been available. Rosaly stood in the entrance to Ramos' cubicle and threatened Ramos with an assault.[1] Shaken by the confrontation, Ramos began to cry and went to the company infirmary. Ramos was excused from work by the company doctor; he never returned to work.

Ramos was diagnosed with depression. In March 1994 the Puerto Rico State Insurance Board found that he had been disabled since April 21, 1992. In December 1994, Ramos filed suit alleging that Davis & Geck constructively discharged him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the

---

1. There was testimony that Rosaly's comment—that he was "going to knock [Ramos] on the head"—was only a figurative threat. However, the jury could have interpreted Rosaly's comment as a real threat and considered it as such in finding a constructive discharge.

ADEA), and Puerto Rico's Law 100, P.R. Laws Ann. tit. 29, § 146 et seq. After a five day jury trial in January 1997, the jury found for Davis & Geck on the ADEA claim and for Ramos on the Puerto Rico Law 100 claim. It awarded Ramos $150,000 in damages, doubled to $300,000 pursuant to Puerto Rico law.[2] *See* P.R. Laws Ann. tit. 29, § 146 (requiring employers found to have violated Law 100 to pay the aggrieved employee "a sum equal to twice the damages sustained").

Both parties filed post-verdict motions. Davis & Geck sought a judgment as a matter of law or a new trial, both of which were denied. Ramos sought front pay, attorney's fees, and pre-judgment interest. Although the court denied front pay and pre-judgment interest, it awarded attorney's fees of $37,500—significantly less than the $303,360 requested by plaintiff. These appeals followed.

## II.

### A. *Davis & Geck's Appeal*

Davis & Geck argues that its post-verdict motions were improperly denied because Ramos failed to adduce sufficient evidence to support a jury finding that he had been constructively discharged. It further argues that the district court erred by failing to require proof that Davis & Geck intended to force Ramos to quit as an element of a claim of constructive discharge. Neither argument is availing.

### 1. Sufficient Evidence of Constructive Discharge

■ A judgment as a matter of law is only warranted if "no reasonable jury could have returned a verdict adverse to the moving party." *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1483 (1st Cir. 1994). In reviewing the denial of a request for such a judgment, we "may not assess the credibility of witnesses, evaluate the weight of the evidence or resolve conflicts in testimony, but rather must view all facts and reasonable inferences therefrom in the light most favorable to the non-movant." *Davet v.*

*Maccarone*, 973 F.2d 22, 28 (1st Cir.1992). Our review of the denial of a request for a new trial is "similarly circumscribed, but counsels ample deference to the district court's exercise of discretion." *Rolon–Alvarado v. Municipality of San Juan*, 1 F.3d 74, 77 (1st Cir.1993). A new trial should only be ordered "if [the court] believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Velazquez v. Figueroa–Gomez*, 996 F.2d 425, 427 (1st Cir.1993).

■ The court instructed the jury to apply an objective standard of constructive discharge, requiring a determination whether work conditions were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986) (quoting *Alicea Rosado v. Garcia–Santiago*, 562 F.2d 114, 119 (1st Cir.1977)). While "the focus is upon the 'reasonable state of mind of the putative discriminatee' [in this case Ramos] ... the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." *Id.* (internal citations omitted). The question, then, is whether Ramos presented sufficient evidence to allow the jury to credit his claim that a reasonable employee would have felt compelled to resign under the circumstances.

It is true that Ramos' demotion did not entail changes in salary and benefits. However, "the fact that salary and benefits have not been decreased has never been held to be a conclusive factor; courts applying the objective standard in ADEA constructive dismissal cases consider a variety of often case-specific factors." *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 26 (1st Cir. 1997). Davis & Geck "complains that a mere change in cubicle location, change in work title, change in duties, a requirement that the employee work on his vacation time, and an extremely harsh confrontation with a supervisor can not accumulate into a constructive discharge." *Ramos*, 968 F.Supp. at 779.

---

**2.** Ramos' wife and two children also filed derivative suits. Ramos' wife was awarded $50,000 by the jury pursuant to Article 1802 of the Puerto

Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141; the two sons were not awarded any damages. These judgments were not appealed.

However, this catalogue is incomplete and the totality of the facts may not seem "mere" to a reasonable employee, or to a reasonable jury. We agree with the district court that the jury was entitled to find that Davis & Geck constructively discharged Ramos.

### 2. Proof of the Employer's Intent

■ Davis & Geck argues that the imposition of objectively oppressive work conditions should not suffice to establish a constructive discharge without proof that the employer created the intolerable work conditions with the specific intent of forcing the employee to resign. Such a requirement of proof of employer intent would plainly be at odds with our settled precedent: "We have long applied an 'objective standard' in determining whether an employer's actions have forced an employee to resign." *Serrano–Cruz*, 109 F.3d at 26 (citing *Calhoun*, 798 F.2d at 561). The test is whether "*a reasonable person* in the employee's shoes would have felt compelled to resign" *Calhoun*, 798 F.2d at 561 (emphasis added), irrespective of employer intent.[3]

Davis & Geck cites language in our *Calhoun* opinion in arguing for consideration of the employer's intent. In *Calhoun*, we used an extended quote from a Fourth Circuit opinion which reads in part: "An employee is protected *from a calculated effort* to pressure him [or her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his [or her] coworkers." *Id.* (emphasis added) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985)). Although this reference to "a calculated effort" may suggest that proof of the employer's intent is an element of the constructive discharge, we articulated the constructive discharge standard in *Calhoun* as an objective one and we have not required proof of employer intent in subsequent cases.[4] *See id.; Serrano–Cruz*, 109 F.3d at 26; *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 481 (1st Cir.1993).

Indeed, such a requirement would be inconsistent with the purpose of the constructive discharge doctrine to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job. The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign. One can imagine an employer who subjectively desires an employee to remain, so long as the employee is willing to accept unreasonable, oppressive conditions. Such an employer commits a constructive discharge. In this case, the jury was free to find that a

---

3. We are not faced with the possible exception to an objective standard recognized in *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir.1998) ("Unless the employer is proved to be deliberately taking advantage of a known idiosyncratic vulnerability of the employee ... the test for intolerable working conditions is whether a reasonable employee would have concluded that the conditions made remaining on the job unbearable."). We offer no opinion on the appropriateness of a finding of constructive discharge under such circumstances.

4. Most circuits employ an objective standard for constructive discharge. *See Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir.1984); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980) (opining that a subjective intent requirement "is inconsistent ... with the realities of modern employment"); *Bruhwiler v. University of Tenn.*, 859 F.2d 419, 421 (6th Cir.1988); *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir.1998) (applying the objective standard while noting the possible exception discussed in note 3, above); *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284–85 (8th Cir.1993) ("When an employer denies a conscious effort to force an employee to resign ... the employer must necessarily be held to intend the reasonably foreseeable consequences of its actions."); *Nolan v. Cleland*, 686 F.2d 806, 813–14 (9th Cir.1982); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 343–44 (10th Cir. 1986); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989); *Clark v. Marsh*, 665 F.2d 1168, 1175 n. 8 (D.C.Cir.1981) ("[t]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant"). A minority requires proof of the employer's subjective intent to establish a constructive discharge. *See Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 89 (2d Cir.1996) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily."); *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985).

constructive discharge had occurred without proof of Davis & Geck's intent to cause such a discharge.

### B. *Ramos' Cross Appeal*

#### 1. *Front Pay*

■ The district court declined to award Ramos any front pay, which compensates the plaintiff for the loss of future earnings. The Puerto Rico Supreme Court has held that "when reinstatement of the employee cannot be ordered ... [f]ront pay up to retirement is an indispensable part of the just compensation afforded to the employee discriminated against by reason of age." *Odriozola v. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 16 Offic. Trans. 595, 624, 1985 WL 301222 (1985). In denying front pay damages, the district court held that the jury verdict made Ramos whole and, in the alternative, that Ramos had not proven that the impossibility of reinstatement was caused by the discrimination of Davis & Geck. Because front pay is considered an equitable remedy, "the decision to award or withhold front pay is, at the outset, within the equitable discretion of the trial court." *Lussier v. Runyon*, 50 F.3d 1103, 1108 (1st Cir.1995). We therefore review the front pay determination for an abuse of discretion.

■ To collect front pay in the absence of a request for reinstatement, Ramos had to prove that he could not return to work at Davis & Geck because of the discriminatory acts of the defendant. *See Odriozola*, 16 P.R. Offic. Trans. at 619 (allowing front pay where the plaintiff "could not work because he was ill, and said illness was due to [the employer's] discriminatory action against him"); *see also Lopez–Vicil v. ITT Intermedia, Inc. ("Lopez I ")*, 97 J.T.S. 42 at 833, 838 (1997) (concluding that "the preferred remedy in cases involving discriminatory dismissals is reinstatement, provided that this is possible") (citing *Selgas v. American Airlines, Inc.*, 104 F.3d 9 (1st Cir.1997)). The district court found that "Ramos is capable of returning to his former position but the stresses of his personal life, not the Defendant's prior discriminatory conduct, pose the greatest obstacle for him." *Ramos*, 968 F.Supp. at 773. After a careful examination of the record, including a review of the testimony of two experts who testified contradictorily about Ramos' mental health history,[5] we cannot say that this finding is clearly erroneous: "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 916 (1st Cir.1988) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Consequently, we will not disturb the district court's denial of front pay.

#### 2. Attorney's Fees

■ The district court initially awarded Ramos $37,695 in attorney's fees. Just six days after that ruling, the Supreme Court of Puerto Rico issued a decision establishing that "ordinarily, the amount that the attorney of a prevailing worker may receive under an Act No. 100 claim shall be twenty-five percent (25%) of the base compensation awarded to the worker." *See Lopez–Vicil v. ITT Intermedia, Inc. ("Lopez II")*, 97 J.T.S. 104 at 1250, 1254 (1997). The district court then revised the attorney's fees award to $37,500 in keeping with the *Lopez II* decision, finding that this fee award was adequate to fairly compensate plaintiff's counsel. We find no abuse of discretion in this determination. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 336 (1st Cir.1997) ("We review fee awards deferentially, according substantial respect to the trial court's informed discretion."); *Lopez II*,

---

5. Ramos' expert psychiatrist testified that, in his opinion, "on [sic] April 1992, [Ramos] suffered an acute event in which it took him to a deep depression" and that Ramos did not have an earlier major depression in 1988. 2 Trial Tr. 22, 46. The expert psychologist for Davis & Geck, on the other hand, agreed that Ramos was depressed, "but that that is a long-standing—that was here before 1992, and it's evidence—and that diagnosis is consistent not only with what he presents when I evaluate him November 19th of 1996, it is also a diagnosis that I understand is relevant because of all the symptoms that he was showing prior to 1992." 5 Trial Tr. 144. Dr. Margarida, Davis & Geck's expert psychologist, also opined that "I think [Ramos] can work, yes." *Id.* at 145.

97 J.T.S 104 at 1254 ("Appellate courts, in turn, shall not disturb the trial court's fee award except in cases involving abuse of discretion.").

▮ Ramos offers a second, more novel challenge to the attorney's fees award. Despite the jury's verdict to the contrary, Ramos claims to be a prevailing party under the ADEA, entitled to a consideration of his fee request pursuant to ADEA jurisprudence. This is so, he says, because the jury's finding that he had been the victim of employment discrimination on the basis of age pursuant to Law 100 is in effect a victory under the ADEA as well.

▮ Ramos' proposition is clearly incorrect. As the district court noted, the significant differences in the burden of proof requirements under the ADEA and Law 100 explain the jury's award under Law 100 and its denial under the ADEA. Under the ADEA, "the plaintiff bears the ultimate burden of proving that 'he would not have been fired but for his age.'" *Serrano–Cruz*, 109 F.3d at 25 (quoting *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1335 (1st Cir. 1988)). In employment discrimination claims proceeding under the *McDonnell Douglas* framework, the establishment of plaintiff's prima facie case shifts only a burden of *production* to the defendant (to articulate a legitimate nondiscriminatory reason for the adverse employment action); once the employer meets that burden of production "the presumption of discrimination vanishes and the burden shifts back to the plaintiff" to show that the employer's stated reason is in fact a pretext, and that the real reason was discriminatory animus. *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 26 (1st Cir.1995) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 609 (1st Cir.1985) ("Under the ADEA, the burden of proof is at all times on the plaintiff.").

▮ Under Law 100, however, once the employee triggers the act's protections by showing that his discharge, constructive or otherwise, was not justified, the employee enjoys a presumption that he or she has been the victim of discrimination and the burdens of both production and persuasion shift to the employer. *See Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 27 (1st Cir.1998) (citing *Ibanez Benitez v. Molinos de Puerto Rico, Inc.*, 114 P.R. Dec. 42, 52, 1983 WL 204221 (1983) (concluding that Law 100 "is more favorable to plaintiff than its federal counterpart")); *see also Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 723 (1st Cir.1994) (comparing burdens of proof under the ADEA and Puerto Rico Law 100 and noting that "under Law 100, in contrast [to the ADEA], the burden of proof shifts to the defendant once the plaintiff has established a prima facie case"). "Thus, in order to rebut the Law 100 presumption, the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory age animus." *Alvarez–Fonseca*, 152 F.3d at 27–28. These different burden of proof allocations explain the divergent liability determinations on Ramos' ADEA and Law 100 claims. Ramos is not a prevailing party under the ADEA and has no claim to attorney's fees under that statute.

### 3. *Pre–Judgment Interest*

▮ Plaintiff also assigns error to the district court's refusal to grant pre-judgment interest. Pursuant to Puerto Rico Rule of Civil Procedure 44.3(b), the plaintiff is entitled to pre-judgment interest if the defendant acted in an obstinate manner during the litigation. *See Dopp v. Pritzker*, 38 F.3d 1239, 1252 (1st Cir.1994) (noting that, while Rule 44.3(b) speaks in terms of parties who act "rashly," "the case law makes it transpicuously clear that the legally operative conduct under [Rule 44.3(b)] is that of obstinacy") (citing *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 126–27 (1st Cir.1991)). The district court found that Davis & Geck had not been obstinate and declined to award pre-judgment interest. Such a finding is reviewed for abuse of discretion. *See Id.* at 1253. At the close of the trial, the district court commended the attorneys on both sides for their "competence and diligence." Furthermore, in refusing Ramos' request for pre-judgment interest, the court noted that the defendant's success in defeat-

ing several of the claims justified a robust defense. After a review of the record, and in deference to "the vastly different relationship between the district court and the events of an actual trial, on the one hand, and the court of appeals and those same events, on the other hand," *id.*, we affirm the denial of pre-judgment interest.

For the foregoing reasons, the judgment of the district court is ***affirmed***.