Luis Ferreira VARGAS, Plaintiff,

v.

**PUERTO RICAN–AMERICAN INSURANCE COMPANY,**
Defendant.

**No. Civ.A 98–1204(HL).**

United States District Court,
D. Puerto Rico.

June 16, 1999.

Marta E. Gonzalez, Sanchez Betances & Sifre, San Juan, PR, for Luis Ferreira–Vargas, plaintiff.

Pedro J. Manzano–Yates, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Puerto Rican American Insurance Company, defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a motion for summary judgment by Defendant Puerto Rican–American Insurance Company ("PRAICO"). PRAICO is a Puerto Rico corporation engaged in the insurance business. Plaintiff Luis Ferreira Vargas ("Ferreira") was a PRAICO employee from 1963 until he resigned in 1998. He claims that he was the victim of age discrimination, and he seeks damages under the Age Discrimination in Employment Act of 1967 ("ADEA")[1] and Puerto Rico Law 100.[2] He also claims damages under Article 1802 of the Puerto Rico Civil Code[3] for an alleged defamation.

The Court reviews the record in the light most favorable to Ferreira and draws all reasonable inferences in his favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). Ferreira began working for PRAICO in 1963.[4] Over the years, his evaluations and reviews have been generally excellent.[5] In 1996, he was a deputy manager in the company's claims department.[6] His supervisor was Francisco Arroyo. Francisco Ramos and Patricia Pérez also worked under Arroyo. Ramos was a supervisor in the injuries and public liability department; Pérez was a supervisor in the legal department.[7] Ferreira claims that he had many more years expe-

---

1. 29 U.S.C.A. §§ 621–634 (West 1999 & Supp.1999).

2. 29 L.P.R.A. §§ 146–151 (1995 & Supp. 1998).

3. P.R. Laws Ann. tit. 31, § 5141 (1991).

4. Docket no. 12, exhibit I, at 10.

5. Docket no. 18, exhibit XXXII.

6. Docket no. 12, exhibit II, at 14. The English translations for the exhibits filed by PRAICO in Spanish appear at docket no. 14.

7. Docket no. 12, exhibit II, at 46–47.

rience in the insurance business than either Ramos or Pérez.

Arroyo and Ramos had an amiable working relationship. Their friendship dated back to a time before both men worked at PRAICO. They had previously worked together at another company for five years. Ramos ran errands to take care of Arroyo's personal matters, including going to the bank. According to Ferreira, Ramos treated Arroyo obsequiously.[8] Pérez was also on good terms with Arroyo. She joked around with him often, and he once made a piece of furniture for her as a gift. He entrusted her with many chores which required knowledge of English. There was an affinity between the two of them, and she spent a great deal of time visiting him in his office. They often went to lunch together.[9] Arroyo discussed personal matters with Ramos and Pérez that he did not discuss with Ferreira.[10]

In November 1996, Arroyo promoted both Ramos and Pérez. Ramos was a supervisor in the injuries and public liability department; Arroyo named him manager of the same department. Pérez was a supervisor in the legal department; Arroyo named her manager of her department as well. Arroyo created the position of manager for each of them. Their job duties were essentially the same as when they were supervisors, although they did receive raises and better company cars than the ones they had previously been given.[11] Ferreira, who was only a deputy manager, had a great deal more experience than either Ramos or Pérez, and in years past he had held both of the positions to which each of them were promoted.[12] When Ramos and Pérez were pro-moted, they were both at least twenty years younger than Ferreira, who was 66 at the time.

Ferreira told Arroyo that he too would like to be named a manager.[13] Ferreira wrote Arroyo a letter complaining that Ramos and Pérez had been promoted over him; stating that he had more experience than they did; claiming that their promotions constituted an injustice to him which violated his rights and caused him humiliation; and requesting that he too be promoted.[14] Arroyo did not respond to this request. Ferreira then took his grievance to another forum: on November 22, 1996, he filed an administrative complaint with Puerto Rico's Anti–Discrimination Unit ("ADU"), alleging that the promotions of Ramos and Pérez over him constituted age discrimination.[15] In June 1997, PRAICO was notified that a hearing would be held on Ferreira's complaint in September 1997.[16]

Around the time that the hearing was scheduled to take place, Ferreira was involved in two incidents which he claims were measures directed at him in retaliation for his ADU claim. In the first, on August 26, 1997, Ileana Vallecillo, a PRAICO employee, complained to Maritza Rivera, PRAICO's human resources director, that while she was waiting for the elevator to go up to the office, Ferreira approached her, kissed her on the cheek close to her mouth, and whispered in her ear, "You are beautiful today." In a handwritten memorandum, Vallecillo complained that for years Ferreira had been harassing her with comments that she found to be unpleasant such as "You are the prettiest woman in PRAICO" or "You are more beautiful today than ever."[17] Two days

8. Docket no. 12, exhibit II, at 66–69.

9. Docket no. 12, exhibit II, at 70–72.

10. Docket no. 12, exhibit II, at 64.

11. Docket no. 12, exhibit II, at 44, 46–48.

12. Docket no. 12, exhibit II, at 39–40, 44, 63.

13. Docket no. 12, exhibit II, at 74.

14. Docket no. 12, exhibit V.

15. Docket no. 12, exhibit VI.

16. Docket no. 18, exhibit V.

17. Docket no. 12, exhibit III, addendum E; docket no. 18, exhibit VIII, at 29.

later she sent Rivera another memorandum complaining that Ferreira had made additional remarks to her that "You are irresistible today" and "You are beautiful." She complained that these comments bothered her and that her relationship with Ferreira was not sufficiently close to warrant them.[18] Vallecillo was unaware that Ferreira had filed an age discrimination claim against PRAICO.[19]

Rivera called Ferreira into her office to discuss the matter. She was upset, and told him that there had been complaints because he was greeting female co-workers with a kiss on the cheek. Ferreira acknowledged that he had that custom with co-workers who had been with the company a long time and with whom he had a friendly relationship, but that he considered it to be a sign of respect or chivalry.[20] Rivera conducted an investigation and on November 3, 1997, she sent a confidential memorandum to Ferreira on the incident. She concluded that Ferreira had "apparently inadvertently, caused a hostile environment, which is considered as one of the aspects of sexual harassment." She requested that he immediately cease this conduct and that he take no reprisals against the persons who had complained about his conduct. In the memorandum she also warned him that any violation by him of the company's sexual harassment policy could result in other disciplinary measures, including his dismissal.[21] Rivera also sent a memorandum to Vallecillo informing her of the conclusions of her investigation.[22] The investigation and its outcome were maintained confidential.[23]

The second incident involved Ferreira's alleged offering of medical assistance at PRAICO. In her sworn statement, Rivera alleges that in August 1997, a PRAICO employee had reported to the infirmary complaining of abdominal pains and that Ferreira wanted to examine her.[24] She sent him a memorandum dated October 1, 1997, requesting that he immediately stop his practice of offering medical assistance, medical advice, or physical examinations to his co-workers.[25] Ferreira denies that he did physical examinations and that he would only take a person's vital signs.[26] He has not received any formal medical training.[27] He responded to Rivera with a memorandum in which he replied that he had given first-aid to co-workers when personnel from the human resources department had asked him to do so.[28] In a memorandum dated October 21, 1997, Rivera clarified that she was requesting that he stop any practice of offering physical examinations or medical advice or assistance. She was not referring to his offer of providing first-aid assistance.[29]

In January 1998, Ferreira submitted his letter of resignation. In it he stated that the promotions of Ramos and Pérez over him created an intolerable work environment. He also complained that he had been the subject of investigations within the company which created a hostile work environment.[30] One month later, Ferreira filed this complaint. In it he alleges that he was the victim of age discrimination when Ramos and Pérez were promoted instead of him; that the incidents regarding the sexual harassment investigation and his alleged offer of medical services

18. Docket no. 12, exhibit III, addendum F.

19. Docket no. 18, exhibit VIII, at 29.

20. Docket no. 12, exhibit II, at 95–96.

21. Docket no. 12, exhibit III, addendum G.

22. Docket no. 12, exhibit III, addendum H.

23. Docket no. 12, exhibit III.

24. Docket no. 12, exhibit III.

25. Docket no. 12, exhibit III, addendum B.

26. Docket no. 12, exhibit II, at 90.

27. Docket no. 12, exhibit I, at 11–12.

28. Docket no. 12, exhibit III, addendum C.

29. Docket no. 12, exhibit III, addendum D.

30. Docket no. 12, exhibit VIII.

were retaliatory measures taken against him in response to his ADU claim; that together all of this made his work environment intolerable, that he was forced to resign, and that he was thus constructively discharged; and that he was defamed when Rivera provided Vallecillo with her memorandum concluding that he had committed sexual harassment. In its motion for summary judgment, PRAICO contests all of these allegations. Ferreira has opposed the motion. For the reasons set forth below, the Court grants PRAICO's motion.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

### 1. Claim for the failure to promote

The ADEA makes it unlawful for an employer to take an adverse employment action against an employee because of his age. 29 U.S.C.A. § 623(a)(1); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico*, 152 F.3d 17, 24 (1st Cir.1998); *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1997). An employer may take an adverse action for any reason—fair or unfair—so long as the action is not motivated by an age-based discriminatory animus. *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir.1997). At all times the plaintiff has the burden of proving that his employer discriminated against him because of his age. *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir.1998); *Hidalgo*, 120 F.3d at 332. To survive a motion for summary judgment, an ADEA plaintiff must either adduce direct evidence of discrimination or present circumstantial or indirect evidence to make out a prima facie case of discrimination under the burden-shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See Bramble v. Amer. Postal Workers Union*, 135 F.3d 21, 24 (1st Cir.1998).

In the present case, there is no direct evidence of discrimination, and both parties invoke the *McDonnell Douglas* framework in their briefs. Under this well-established standard, a plaintiff must first make out a prima facie case of age discrimination. *Id.* PRAICO concedes that, for purposes of the failure to promote claim, Ferreira has established a prima facie case. Once a prima facie case has been established, a presumption arises that the employer was motivated by a discriminatory animus. *Shorette*, 155 F.3d at 12. The burden then shifts to the defendant to produce evidence showing a legitimate, nondiscriminatory reason for terminating the plaintiff. *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 734 (1st Cir. 1999); *Hidalgo*, 120 F.3d at 334. This is a burden of production, not of persuasion; the plaintiff always has the task of proving discrimination. *Dichner v. Liberty Travel*,

141 F.3d 24, 30 (1st Cir.1998). The burden is a relatively light one. *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 38 (1st Cir.1995). The employer need only produce competent evidence which, taken as true, would enable the factfinder to conclude that there was a nondiscriminatory reason for the plaintiff's termination. *Ruiz v. Posadas de San Juan Assoc.*, 124 F.3d 243, 248 (1st Cir.1997).

■ In the present case, PRAICO attempts to meet its burden with an affidavit by Rivera in which she states that Arroyo told her that Ramos and Pérez were named managers because they had experience supervising other employees. Ferreira objects to this statement on the grounds that it is inadmissible as hearsay and it is not based on Rivera's personal knowledge. The Court need not pass judgment on the admissibility of Rivera's statement because there is other evidence in the record which allows PRAICO to meet its burden. Ferreira himself testified that Arroyo had been friends for years with Ramos; that he trusted Pérez to do work for him that required a knowledge of the English language; and that Arroyo had a rapport and good personal relations with both Ramos and Pérez.[31] This testimony is evidence of a legitimate nondiscriminatory reason for the promotions of Ramos and Pérez. The fact that Arroyo promoted them because of his personal relations with them may not be fair or even a wise business decision, but it is a reason that is nondiscriminatory. At this stage, that is all that PRAICO need produce to meet its burden.

Once an employer meets this burden, the presumption of discrimination generated by the prima facie case disappears. *Davis & Geck*, 167 F.3d at 734; *Ruiz*, 124 F.3d at 248. It is insufficient for a plaintiff to merely undermine the veracity of the reason proffered by the employer. *Dichner*, 141 F.3d at 30. The plaintiff must adduce evidence to show that the employ-

er's proffered reason is a pretext and that the employer was in reality motivated by age-based discrimination. *Mullin v. Raytheon Co.*, 164 F.3d 696, 699 (1st Cir.1999); *Ruiz*, 124 F.3d at 248; *Hidalgo*, 120 F.3d at 335, 337. The evidence as a whole must allow a reasonable factfinder to infer that the employer's decision was motivated by a discriminatory animus. *Ruiz*, 124 F.3d at 248.

■ In the case before the Court, Ferreira testified that he was vastly more experienced than either Ramos or Pérez and that therefore he should have been promoted instead of them.[32] It may be that Ferreira was in fact more qualified to be named manager. An employer, however, is free to select less qualified candidates. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 423 (7th Cir.1994); *Brown v. Trustees of Boston University*, 891 F.2d 337, 346 (1st Cir.1989); *Mandavilli v. Maldonado*, 38 F.Supp.2d 180, 195 (D.P.R.1999). Absent clear evidence of irrationality, courts should be slow to second guess management decisions on such issues. *Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 329 (1st Cir.1996). Judges should not act as super personnel departments to assess the merits or rationality of an employer's nondiscriminatory decision. *Ruiz*, 124 F.3d at 250; *Hidalgo*, 120 F.3d at 337. Even though Ferreira may be eminently more qualified than Ramos and Pérez, that fact by itself is insufficient to create a genuine issue as to whether PRAICO's proffered reason was a pretext.

More fatal to Ferreira's claim is his lack of evidence of any discriminatory animus on PRAICO's part. To establish this animus, Ferreira in a sworn declaration states that "The reason why Ms. Patricia Pérez and Mr. Francisco Ramos were promoted over me was because of my age." He also states that Arroyo's favoritism towards Ramos and Pérez "was motivated,

---

**31.** Docket no. 12, exhibit II, at 64, 66–73.

**32.** Docket no. 12, exhibit II, at 39–40, 44, 63.

at least in part, on the fact that they were younger than me." [33] In his ADU claim he alleged that he had "been the victim of a pattern of discriminatory conduct by reason of age" in the workplace. He further alleged that he was discriminated against by not being promoted when Ramos and Pérez were promoted.[34] An affidavit used to oppose a motion for summary judgment must set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e); *Casas Office Machines v. Mita Copystar America,* 42 F.3d 668, 681 (1st Cir.1994). The affidavit must be made on personal knowledge and must show that the affiant is competent to testify as to the matters averred. Fed.R.Civ.P. 56(e); *Casas,* 42 F.3d at 682; *Murphy v. Ford Motor Co.,* 170 F.R.D. 82, 84–85 (D.Mass.1997). Generally, a court may not accept a nonmovant's statements regarding the movant's thoughts. *Simas v. First Citizens' Federal Credit Union,* 170 F.3d 37, 50–51 (1st Cir.1999). Nor may the court accept the nonmovant's conclusory allegations regarding discriminatory intent. *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 6 (1st Cir.1998). A plaintiffs subjective perception is not evidence of an employer's discriminatory intent. *Pilgrim v. Trustees of Tufts College,* 118 F.3d 864, 871 (1st Cir. 1997); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."). An employee's affidavit regarding the motive or intent of an employer must contain a foundation to indicate the basis of the affiant's information. *Connell v. Bank of Boston,* 924 F.2d 1169, 1177–78 (1st Cir. 1991); *see also Ruiz,* 124 F.3d at 249–50 (Plaintiff failed to provide an evidentiary foundation upon which it could reasonably be inferred that the employer's actions were discriminatory or age-based). Even in cases where the elusive concept of intent is at issue, summary judgment may be appropriate if the nonmovant rests only upon conclusory allegations and unsupported speculation. *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 167 (1st Cir.1998).

In the case before the Court, Ferreira in his sworn declaration and ADU complaint avers that Ramos and Pérez were promoted over him because of his age and that Arroyo favored these two because they were younger than Ferreira. Nowhere does Ferreira explain, however, what is his basis or foundation for these conclusory statements. Arroyo's motive or alleged discriminatory bias was not something of which Ferreira normally would have had personal knowledge. There is no evidentiary foundation to indicate how he knew what exactly were Arroyo's reasons for deciding to promote Ramos and Pérez and for favoring these two over Ferreira. Without a proper foundation, Ferreira's own subjective perception of Arroyo's motive is not evidence of discrimination. *See* Fed.R.Civ.P. 56(e); *Simas,* 170 F.3d at 50–51; *Santiago,* 138 F.3d at 6; *Pilgrim,* 118 F.3d at 871. In his ADU complaint he also alleged that he had been the victim of a pattern of age discrimination. The only example of age discrimination to which he cites in his ADU claim is the promotions of Ramos and Pérez. It may have been unfair to promote these two employees when Ferreira had substantially more experience than them. PRAICO, however, is free to make this decision provided it was not motivated by an age-based discriminatory animus. *See Hidalgo,* 120 F.3d at 337. The Court is not a super personnel department which may assess the merits of the decision to promote these two employees. *See Ruiz,* 124 F.3d at 250; *Hidalgo,* 120 F.3d at 337. Absent any other evidence of a discriminatory animus, the mere fact that Ramos and Pérez may have

---

**33.** Docket no. 18, exhibit I.

**34.** Docket no. 12, exhibit VI.

received undeserved promotions is insufficient to establish a pattern of age discrimination. Ferreira has thus failed to adduce competent evidence to show that Arroyo or PRAICO failed to promote him because of his age. Because he has failed to adduce evidence to create a genuine issue as to whether PRAICO's proffered reason was a pretext and to whether the real reason was age-based discrimination, Ferreira's claim regarding the failure to promote him must be dismissed.

### 2. Retaliation claim

■ Ferreira also claims that he was the victim of illegal retaliation. Specifically, he alleges that the memoranda from Rivera ordering him to stop practicing medicine at work and the investigation of Vallecillo's complaint that Ferreira was sexually harassing her were reprisals taken against him for his having filed a claim with the ADU. When, in a claim of retaliation, there is no direct evidence of an improper motive, the record should be analyzed with the *McDonnell Douglas* burden-shifting test. *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir.1998). To make out a prima facie retaliation claim, a plaintiff must show that he engaged in protected conduct, that he was subject to an adverse employment action, and that there was a causal connection between the adverse action and his protected conduct. *Id.; Champagne v. Servistar Corp.*, 138 F.3d 7, 12 n. 5 (1st Cir.1998). Once the plaintiff meets his burden at this stage, the employer has the burden of production to articulate a legitimate, non-retaliatory reason for the employment action. *Provencher v. CVS Pharmacy*, 145 F.3d 5, 10 (1st Cir.1998); *McMillan*, 140 F.3d at 309. The burden then shifts back to the plaintiff who must show by a preponderance of the

evidence that the proffered reason is merely a pretext and that the real reason was the employer's retaliatory animus. *McMillan*, 140 F.3d at 309; *Champagne*, 138 F.3d at 12–13.

■ In the present case, Ferreira's filing of a claim with the ADU is a protected activity. *See* 29 U.S.C.A. § 623(d). He claims that the adverse employment actions to which lie was subjected were the memoranda regarding his alleged practice of medicine and the investigation of the sexual harassment claim. The determination of whether an employer's conduct constitutes an adverse employment action is an objective one. The mere fact that the employee may be displeased by his employer's act will not elevate the act to an adverse employment action. *Simas*, 170 F.3d at 49–50;[35] *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir.1996). For an act to be an adverse employment action, the employer must have either (1) taken something of consequence from the employee by, for example, demoting him, reducing his salary, or divesting him of significant duties, or (2) withheld an accouterment of the employment relationship. *Blackie*, 75 F.3d at 725. Not every unpleasant matter will create a cause of action; a case-by-case review is necessary. *Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994).

■ In the present case, the investigation of Vallecillo's complaint regarding Ferreira's conduct culminated in a memorandum to him from the director of the human resources department in which she concluded that he had inadvertently created a hostile environment, requested that he immediately stop this behavior, and warned him that he could be fired if he engaged in such conduct again. The conclusion that he had committed sexual

**35.** The plaintiff in *Simas* brought his claim of retaliation under the Federal Credit Union Act, 12 U.S.C. § 1790b. The meaning of the phrase "adverse employment action" should remain constant regardless of the statute under which the retaliation claim is being

brought. *LaRou v. Ridlon*, 98 F.3d 659, 662 n. 6 (1st Cir.1996). Thus, the Court will consider decisions from non-ADEA cases as to what constitutes an adverse employment action.

harassment and the warning that he could be fired if he did not change his conduct was a sufficiently severe disciplinary measure to constitute an adverse employment action.

The incident regarding Ferreira's alleged practice of medicine on the job is less clear. In her memoranda, Rivera merely requested that Ferreira not engage in any conduct that could be considered giving medical advice, offering physical examinations, or providing prescription medicines. She clarified that Ferreira would be allowed to offer first aid assistance, provided he was certified to do so.[36] It does not appear that Rivera deprived Ferreira of anything of consequence. He was asked to stop performing certain acts, but it is undisputed that Ferreira was not authorized to practice medicine. Thus, it cannot be said that he was relieved of any legitimate work-related duties. In her communications with Ferreira over this issue, Rivera did not threaten or discipline him. It is unclear what adverse consequences he may have suffered as a result of this matter. However, because a plaintiff's burden of establishing a prima facie case is not onerous, *Simas,* 170 F.3d at 44, the Court will assume *dubitante* that Rivera's memoranda to Ferreira instructing him not to engage in the practice of medicine constituted an adverse employment action. For the same reason, the Court will also assume that the fact that the sexual harassment and practice of medicine controversies occurred around the same time as Ferreira's hearing before the ADU is sufficient to establish a causal connection between the protected conduct and the adverse action.

Once a plaintiff establishes a prima facie retaliation claim, the employer has the burden of producing a nondiscriminatory motive for its actions. *Simas,* 170 F.3d at 44; *Provencher,* 145 F.3d at 10. PRAICO easily meets its burden at this stage. There is evidence that in August 1997 Ferreira wanted to perform an examination of a co-worker who felt ill and that he once gave Rivera medicine for her mother which required a prescription.[37] There is also evidence that Vallecillo complained to Rivera because Ferreira kissed her near the mouth and because he often made remarks to her about her appearance which made her feel uncomfortable.[38] This evidence allows PRAICO to meet its burden of producing legitimate nondiscriminatory reasons for its actions.

Once an employer meets its burden of production, the plaintiff has the burden of showing that the employer's proffered reason was merely a pretext and that the real reason was a retaliatory animus. *Simas,* 170 F.3d at 44; *McMillan,* 140 F.3d at 309. Ferreira makes much of the temporal proximity between his ADU hearing and the sexual harassment and medical practice incidents. His ADU hearing was scheduled for September 1997. Vallecillo complained about Ferreira's alleged sexual harassment at the end of August 1997; Rivera then conducted an investigation and sent Ferreira a memorandum informing him of her conclusions in November. Rivera sent her memoranda asking Ferreira not to practice medicine in October. Close temporal proximity between protected conduct and an adverse employment action may give rise to a permissible inference of retaliation. *Hodgens,* 144 F.3d at 168. Such evidence, however, is not conclusive. *Id.* at 170. A court should consider the actions taken against the employee within the overall context and sequence of events. *Champagne,* 138 F.3d at 13; *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16–17 (1st Cir.1997). Other factors that a court should examine include the historical background of the decision, any departures from normal procedure, and contemporary statements by the em-

---

**36.** Docket no. 12, exhibit III, addenda B & D.

**37.** Docket no. 12, exhibit III; docket no. 18, exhibit IV, at 67–70.

**38.** Docket no. 12, exhibit III, addenda E & F; docket no. 18, exhibit VIII.

ployer's decision makers. *Hodgens,* 144 F.3d at 168–69.

In the present case it is undisputed that Vallecillo complained about the way that Ferreira was treating her. He has adduced no evidence that would indicate that she was making up her concerns. In fact, Ferreira himself has adduced evidence which indicates not only that Vallecillo indeed felt uncomfortable by Ferreira's conduct but also that she had no idea that Ferreira had filed an ADU complaint accusing PRAICO of age discrimination.[39] There is nothing to indicate that Vallecillo's sexual harassment complaint itself was a sham or pretext. Ferreira appears to argue that PRAICO reacted too harshly to Vallecillo's complaint. In the modern workplace, it is a foolhardy employer who does not afford an employee's complaints of sexual harassment total gravity and who does not respond to them immediately with all available resources. The Supreme Court has recently held that an employer may be liable for negligently causing sexual harassment if it knew or should have known about harassing conduct but failed to stop it. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, ——, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998). The employer has an affirmative duty to prevent sexual harassment and to make reasonable efforts to comply with this duty. *Faragher v. City of Boca Raton,* 524 U.S. 775, ——, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (1998). Also, an employer has an affirmative defense to vicarious liability for sexual harassment if the employer exercised reasonable care to prevent and promptly correct sexually harassing behavior and the complaining employee failed to reasonably take advantage of any corrective opportunities provided by the employer. *Id.* at ——, 118 S.Ct. at 2293.

In the present case, the evidence as a whole indicates that PRAICO made reasonable efforts to investigate and to promptly comply with its duty to correct the situation of which Vallecillo complained. Rivera interviewed all parties concerned and notified these parties through confidential memoranda of the results of her investigation. The fact that Ferreira may have found the outcome to be unpleasant did not affect PRAICO's duty to take the actions that it did. For PRAICO to do nothing or to not react vigorously to Vallecillo's complaint could expose it to further liability. The record as a whole indicates that PRAICO was presented with an employee who sincerely felt uncomfortable by Ferreira's conduct; that PRAICO promptly investigated the manner; that PRAICO concluded that Ferreira had inadvertently created a hostile work environment; and that PRAICO informed Ferreira of its conclusion and warned him to stop. The proceedings were kept confidential. It appears that PRAICO complied with its duty to respond to Vallecillo's complaint.

Ferreira argues that greeting with a kiss or complimenting a co-worker on her appearance does not rise to the level of sexual harassment, as defined by PRAICO's own policy on the subject. This argument is unavailing. Sexual harassment is defined not by a company's own policy or employee manual, but by statute and case law. Additionally, PRAICO's policy forbids creating a hostile work environment and does specify that all personnel should avoid comments or excessive familiarity which could result in misunderstandings.[40] Thus, Ferreira's comments and conduct arguably fall within the type of behavior prohibited by PRAICO's policy. At any rate, the question of whether Ferreira actually violated PRAICO's policy on sexual harassment is too far afield of the controversy before the Court: whether the sexual harassment incident constituted retaliation by PRAICO against Ferreira. There is no evidence that Vallecillo's complaint or Rivera's investigation of it was a sham intended to hide an ulterior retaliato-

---

**39.** Docket no. 18, exhibit VIII, at 29.

**40.** Docket no. 12, exhibit VII.

ry motive. This incident did arise around the same time that a hearing on Ferreira's ADU complaint was scheduled. However, there is no evidence that Vallecillo was making up her complaint. A sexual harassment complaint is a serious matter, and an employer should react to it as soon as possible. Here it appears that PRAICO did so. Other than temporal proximity between the ADU hearing and Vallecillo's complaint, there is no evidence to support a claim of retaliation.

■ With regard to the medical practice incident, there is also a lack of evidence that this was a sham or otherwise tinged by mendacity. It is undisputed that Ferreira offered at least first aid services to his co-workers. In her memoranda on this subject, Rivera only told him that he should limit his services to first aid and that he should not engage in any conduct that might be the practice of medicine. Other than the timing of this incident, there is nothing to indicate that PRAICO sent Ferreira these memoranda as a means of retaliating against him for his ADU claim. Thus, because Ferreira has failed to adduce evidence to demonstrate that PRAICO's proffered reasons for its actions were merely a pretext and that the real reason was a retaliatory animus, his claim of retaliation must be dismissed.

*3. Constructive discharge claim*

■ Ferreira also alleges that the failure to promote him, combined with the sexual harassment and medical practice incidents, made his working conditions so intolerable that he was compelled to resign. He claims therefore that he was constructively discharged. Ferreira must first make out a prima facie case establishing that he was constructively discharged. *See Serrano–Cruz,* 109 F.3d at 25; *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993). PRAICO contends that Ferreira has failed to establish this element. A person has been constructively discharged when his employer's actions have made work so unappealing, arduous,

or intolerable that a reasonable person would feel compelled to resign. *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 27 (1st Cir.1995); *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986). This determination is an objective one. *Davis & Geck,* 167 F.3d at 731; *Serrano–Cruz,* 109 F.3d at 26. Thus, the employee's subjective perceptions do not govern the issue. *Davis & Geck,* 167 F.3d at 731. An employee may not be unreasonably sensitive to his working conditions. *Serrano–Cruz,* 109 F.3d at 26; *Greenberg,* 48 F.3d at 27. Salary conditions are an important factor, but they are not dispositive. *Serrano–Cruz,* 109 F.3d at 26; *Ortiz Rodriguez v. Banco Popular de Puerto Rico,* 27 F.Supp.2d 309, 314 (D.P.R.1998). A demotion from a supervisory position or a placement in demeaning or humiliating conditions are also valid indicators. *Ortiz Rodriguez,* 27 F.Supp.2d at 314–15. Overall, a court should consider a variety of case-specific factors. *Davis & Geck,* 167 F.3d at 731; *Serrano–Cruz,* 109 F.3d at 26.

■ In the present case, Ferreira does not claim that he was demoted, forced to take a pay cut, or given unpleasant duties. He complains that he was passed over for a promotion. In his sworn declaration he states that he was substantially more qualified than either Ramos or Pérez. In his letter of resignation he stated that their promotion created for him an intolerable work environment. It may be a source of embarrassment to a reasonable employee that other, less experienced co-workers are promoted over him, but that situation by itself should not make work so intolerable that he feel compelled to resign. Ferreira also claims that he was forced to resign because of the sexual harassment investigation and the medical practice incident. There is no evidence that these actions by PRAICO were unreasonable. Ferreira claims that they made him feel humiliated and unappreciated. His subjective perceptions are not sufficient to establish that his

working conditions were intolerable. *See Davis & Geck,* 167 F.3d at 731. It is understandable that Ferreira would be upset that he was investigated because a co-worker accused him of sexually harassed and that he was told that his offers of medical assistance should be limited to first aid. It is not understandable, however, that a reasonable employee would feel compelled to resign because of these two incidents and because less qualified co-workers were promoted instead of him. An unreasonable sensitivity to such situations will not constitute a constructive discharge. *See Serrano–Cruz,* 109 F.3d at 26; *Greenberg,* 48 F.3d at 27. Taken as a whole, the failure to promote, the medical practice incident, and the sexual harassment investigation are not sufficient to show that Ferreira's working conditions were so arduous or intolerable that a reasonable employee would have felt compelled to resign. Thus, Ferreira has not made a prima facie showing that he was constructively discharged.

Even if Ferreira had made a prima facie showing, this claim would still fail. Once a plaintiff makes out a prima facie case of a constructive discharge, the employer has the burden of producing legitimate nondiscriminatory reasons for its actions. *Serrano–Cruz,* 109 F.3d at 25; *Vega,* 3 F.3d at 479. As discussed in the two previous sections of this opinion, PRAICO has met its burden of producing legitimate reasons for its failure to promote Ferreira, for the sexual harassment investigation, and for the medical practice incident. Thus, Ferreira now has the burden of showing that PRAICO's reasons are pretextual and that its real reason is discriminatory. *Serrano–Cruz,* 109 F.3d at 25–26; *Vega,* 3 F.3d at 479. As the Court discussed in the earlier sections of this opinion, the record is devoid of evidence of a retaliatory or age-based discriminatory animus. There is also no evidence that PRAICO's reasons are a sham or pretext. For all of the above reasons, Ferreira's constructive discharge claim must also be dismissed.

### 4. Puerto Rico law claims

 Lastly, Ferreira brings claims under Puerto Rico law. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.* at 726, 86 S.Ct. at 1139; *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990); *Soto v. Carrasquillo,* 878 F.Supp. 324, 332 (D.P.R.1995), *aff'd sub nom. Soto v. Flores,* 103 F.3d 1056 (1st Cir.1997). Because the Court has dismissed Ferreira's ADEA claims, the Court hereby dismisses without prejudice his Puerto Rico law claims.[41]

WHEREFORE, the Court grants PRAICO's motion for summary judgment (docket no. 12). Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

**41.** One of Ferreira's local law claims is for an alleged defamation arising out of Rivera's investigation of the sexual harassment claim. The only person besides Ferreira to whom Rivera sent a memorandum on this subject was Vallecillo. Ferreira claims that the memorandum to Vallecillo constituted a defamatory statement.

An intracorporation communication is protected by a conditional privilege if it was made in good faith and the communicator was complying with a duty towards others.

*See Porto y Siurano v. Bentley P.R., Inc.,* 132 P.R.Dec. 331, 353–54 (1992). Whether Rivera had a duty to communicate to Vallecillo the results of her investigation and whether the communication is therefore a protected one are novel questions of Puerto Rico law. Thus, the Court has an additional reason to decline to exercise supplemental jurisdiction over the defamation claim. *See* 28 U.S.C.A. § 1367(c)(1) (West 1993); *Penobscot Indian Nation v. Key Bank of Maine,* 112 F.3d 538, 564 (1st Cir.1997).