# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3376MN

_____

Robert L. Hoffman,

        Appellant,

v.

Robert E. Rubin, Secretary, United
States Department of the Treasury,

        Appellee.

On Appeal from the United
States District Court
for the District of
Minnesota.

_____

Submitted: June 14, 1999

Filed: October 19, 1999

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and BYRNE,[1] District
    Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.


Robert L. Hoffman alleges that his employer, the Department of Treasury's
Bureau of Alcohol, Tobacco, and Firearms, retaliated against him in violation of Title
VII of the Civil Rights Act of 1964, and disclosed private personnel information about

_____

[1]The Hon. William Matthew Byrne, Jr., United States District Judge for the
Central District of California, sitting by designation.

him in violation of the Privacy Act, after he supported publicly a colleague who had alleged that she was sexually harassed and discriminated against by other ATF agents. The District Court,[2] holding that Mr. Hoffman could not establish a prima facie case of retaliation, or demonstrate that the disclosures of personnel information violated the Privacy Act, granted the ATF's motion for summary judgment. We affirm.

I.

The facts of this case are extensive. Mr. Hoffman became an ATF agent in 1989, and was stationed in St. Paul. In early 1992, Mr. Hoffman's supervisor, Michele Roberts, was accused by Patrick Hourihan, whom Ms. Roberts also supervised, of sexual harassment. Mr. Hourihan had been suspended by Ms. Roberts for insubordination, and Mr. Hourihan alleged that he was suspended because he had ended a personal relationship with Ms. Roberts. According to Ms. Roberts, Mr. Hourihan, when informed of his suspension, threatened her, and, fearful that he might harm her physically, she contacted the ATF's Office of Internal Affairs.

Because Mr. Hoffman worked with both Ms. Roberts and Mr. Hourihan, internal-affairs investigators interviewed him several times in 1992. He reported a variety of misconduct by Mr. Hourihan, including allegations that Mr. Hourihan had discharged a firearm improperly while intoxicated, harassed a neighbor for complaining about his dog, and stolen explosives from the ATF. Mr. Hoffman was interviewed about allegations Mr. Hourihan had made against him, including an allegation that Mr. Hoffman and Ms. Roberts had been involved romantically, which Mr. Hoffman denied. In July, Ms. Roberts filed a formal complaint alleging that she had been subjected to sexual harassment and discrimination within the ATF.

---

[2]The Hon. David S. Doty, United States District Judge for the District of Minnesota.

In September of 1992, Mr. Hourihan resigned from the ATF, and Mr. Hoffman was suspended for ten days for failing to make a timely report of the incident during which Mr. Hourihan improperly discharged a firearm. Mr. Hoffman alleges that the suspension was in retaliation for his having supported Ms. Roberts's story. In addition, Mr. Hoffman was told during this time that he was going to be transferred to Houston, despite his on-going effort to be transferred to Milwaukee, nearer his son. (The transfer to Houston never took place.) Mr. Hoffman also alleges that he was told that no agents were available to assist him in his investigations, and that he was required to call in from the field and submit daily itineraries, although this was not required of other agents.

Mr. Hoffman was interviewed in October of 1992 for a "60 Minutes" program about the sexual harassment of Ms. Roberts and other female agents in the ATF. The director of the ATF, Stephen Higgins, was also interviewed, and he later wrote a letter to "60 Minutes" suggesting that "you ought to secure a waiver and get some insight into the reason Mr. Hoffman is being suspended and reassigned." Also, in order to respond to press inquiries about the "60 Minutes" segment, which was broadcast in January of 1993, ATF officials prepared a briefing document that referred to Mr. Hoffman by name and disclosed the reason for his suspension.

In March of 1993 the ATF granted Mr. Hoffman's request that he be placed on medical leave on account of stress. (At the time of oral argument, Mr. Hoffman remained on medical leave.) On June 30, 1993, Mr. Hoffman consulted an Equal Employment Opportunity counselor at the ATF. Several months later, in September, Mr. Hoffman filed his first formal EEO complaint, alleging that the ATF had retaliated against him for supporting Ms. Roberts. The retaliation he cited included the proposed transfer, his ten-day suspension, a performance evaluation that lowered his job rating by two levels, a change in his duties, and an attempt by ATF agents to have him prosecuted for recording an interview with internal-affairs investigators. He also

alleged that the ATF failed to take action against Mr. Hourihan after Mr. Hoffman reported that Mr. Hourihan was conducting surveillance on his residence.

The EEO office of ATF, after conducting an investigation, dismissed Mr. Hoffman's complaint in December of 1993, finding that all of his claims except one were time-barred because he had not contacted an EEO counselor within 45 days of the alleged retaliatory acts. The most recent complaint (and the only one within the limitations period) concerned the attempted prosecution. The EEO office determined that the attempted prosecution was not an "adverse action" as defined in Title VII. Mr. Hoffman appealed, and the agency's dismissal of the complaint was upheld by the Equal Employment Opportunity Commission.

In the spring of 1994, an ATF agent told a law-enforcement officer in Minnesota that Mr. Hoffman was involved with a motorcycle gang whose members had often been investigated by the ATF and other law-enforcement agencies. The ATF agent had heard from Milwaukee police officers that Mr. Hoffman was seen at a meeting of the Outlaws Motorcycle Club, and, from a confidential informant, that Mr. Hoffman had attended an Outlaws Christmas party. The agent, Ron Holmes, gave the information to Ron Liebenstein, an investigator with the Rice County, Minnesota, Sheriff's Department.

Around the same time, Mr. Holmes distributed a memorandum to ATF agents in the Chicago region that referred to Mr. Hoffman's involvement with the Outlaws, although it did not identify Mr. Hoffman by name. The memorandum said that "an ATF agent, who is not on active duty, had been observed inside the Outlaws/Milwaukee Clubhouse for a Christmas Eve (1993) party, according to Milwaukee law enforcement officers, and was photographed by law enforcement officers in Wisconsin while talking with Outlaws at a February 1994 swap meet."

In the summer of 1994 Mr. Hoffman filed a second EEO complaint, alleging that the ATF was retaliating against him by spreading false allegations about him. Although he admits having attended the swap meeting, he denies attending the Christmas party or engaging in any improper conduct with the Outlaws. In October the EEO office dismissed the second complaint, finding that Mr. Hoffman had failed to show that the statements in Mr. Holmes's memorandum affected a term, condition, or privilege of his employment. Mr. Hoffman did not appeal this decision to the EEOC.

Also in the summer of 1994, the ATF notified Mr. Hoffman that, upon returning to active duty, he would be assigned to the Chicago office. Mr. Hoffman filed a third complaint, alleging that the transfer was yet another act of retaliation. Mr. Hoffman then filed this lawsuit, in November of 1994, and discovery began. The third administrative complaint was dismissed as duplicative because it concerned the same allegation as the lawsuit.

In January of 1996, Mr. Hoffman learned that he was being investigated on suspicion of leaking information to the Outlaws. During the course of another criminal investigation, the ATF began to suspect that information about the investigation was being leaked to the Outlaws by Mr. Hoffman. Mr. Hoffman alleged, in a fourth EEO complaint, that this was another act of retaliation by the ATF. Because the investigation was on-going, the agency dismissed the complaint.

II.

Mr. Hoffman alleges that the ATF retaliated against him for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1994). In order to establish a prima facie case of retaliation, Mr. Hoffman must be able to show that he engaged in protected activity, that an adverse employment action occurred, and that there was a causal connection between the two. For purposes of Title VII, an employer may not discriminate against an employee who

has "opposed any practice made an unlawful employment practice by this subchapter, or . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). With respect to each claim of retaliation, the District Court held either that Mr. Hoffman failed to show that he engaged in protected activity, that the claims were barred because he failed to exhaust his administrative remedies, that he failed to present evidence of adverse employment action, or that he failed to present evidence showing that the ATF's reasons for the action were pretextual. Having reviewed the evidence presented to the District Court, and having drawn all inferences in favor of Mr. Hoffman, as we are required to do, we reach the same conclusion as the District Court, that the ATF was entitled to summary judgment.

A.

Mr. Hoffman alleges that he engaged in protected activity by providing evidence in the two internal-affairs investigations. We agree with the District Court, for the most part, that Mr. Hoffman's involvement in these investigations was limited to accusations about Mr. Hourihan's alleged misconduct, not allegations concerning any conduct that is unlawful under Title VII. When Mr. Hoffman was first interviewed by internal-affairs investigators, no complaint had been filed by Ms. Roberts, nor had she contacted an EEO counselor. Mr. Hoffman did not allege that he was aware that Ms. Roberts was preparing to file a complaint of discrimination, that he assisted her in preparing or filing the charge, or that he assisted her in any way in prosecuting the claim.

Mr. Hoffman did, however, tell investigators in the spring of 1992 that Mr. Hourihan had said that he "would love to get down [Ms.] Roberts's pants," and that he was troubled because she was not interested in him. Mr. Hoffman also told investigators that Mr. Hourihan had spread rumors that Mr. Hoffman and Ms. Roberts had been involved romantically, and that he did not believe Mr. Hourihan's allegation

-6-

that he had had an affair with Ms. Roberts, because Mr. Hourihan had not bragged about it previously, as he had done about other relationships. Mr. Hoffman was interviewed again, in May of 1992, and he provided an affidavit denying Mr. Hourihan's charges. In May of 1993, according to Mr. Hoffman, he provided another affidavit, this time corroborating some of Ms. Roberts's allegations of harassment, including his belief that Mr. Hourihan "became obsessed with Michele Roberts and felt rejected when she did not respond to his advances, and that he then created a story which slandered Michele as revenge for personnel actions she took against him." App. at 1367.

Mr. Hoffman's appearance on "60 Minutes" was the only other arguably protected activity in which he engaged. There is no dispute that the program concerned allegations of sexual harassment and discrimination within the ATF. Although Mr. Hoffman's role was limited, we assume, as the District Court did, that his appearance on the show could be construed as opposing a practice made unlawful by Title VII.

B.

As we have said, Mr. Hoffman first consulted an EEO counselor on June 30, 1993. An employee alleging discrimination must pursue an administrative remedy by consulting with his agency's EEO counselor within 45 days of the alleged discriminatory acts. Otherwise, the alleged act is considered outside the limitations period. In this case, the District Court held that any specific act of retaliation that occurred before May 16, 1993, is time-barred. According to Mr. Hoffman, the last retaliatory event that occurred within the limitations period was on May 19, 1993, when he learned that the ATF had contacted the Ramsey County Attorney's Office, in the fall of 1992, about prosecuting him for tape recording an interview with internal-affairs investigators. Because that event was within the applicable time period, the previous acts of retaliation, in Mr. Hoffman's view, should be considered under the continuing-violations doctrine.

We disagree for two reasons. First, Mr. Hoffman admitted, in response to interrogatories, that he learned of the ATF's efforts to have him prosecuted as early as the fall of 1992. Because he waited until June 30, 1993, to consult with an EEO counselor, this alleged retaliatory act is not within the limitations period. Although Mr. Hoffman asserts that the District Court misread his response to the interrogatories, he directs us to nothing in the record to support this claim. Second, even if this event were not outside the limitations period, it was not an adverse employment action. Any decision to prosecute Mr. Hoffman for violating Minnesota state law rested with the local prosecutor, and, in fact, no charges were ever brought against him. This incident cannot serve as the basis for applying the continuing-violations doctrine.[3] Accordingly, we hold that the retaliatory acts alleged to have been committed before May 16, 1993, are outside the limitations period.

## C.

We turn now to three alleged acts of retaliation that are not time-barred: the proposed transfer to Chicago, the publication of Ron Holmes's memorandum and statements he made to Ron Liebenstein, and the criminal investigation of Mr. Hoffman.

With respect to the proposed transfer to Chicago, to take place if plaintiff returns to active duty, we agree with the District Court that it would not be considered an adverse employment action within the meaning of Title VII. An adverse action occurs when an employee suffers some personal loss or harm with respect to a term, condition, or privilege of employment. Mr. Hoffman's proposed transfer cannot be said to have

---

[3]Mr. Hoffman also argues that his failure to contact an EEO counselor should be excused under equitable tolling principles. This argument is unavailing. Equitable tolling is precluded where the employee was aware of his rights and where there is no evidence that the agency prevented the employee from filing a claim. Mr. Hoffman does not contend that he was unaware of his rights, or that the ATF prevented him from filing a claim.

caused him personal loss or harm, or disadvantage him in any way cognizable under Title VII. His rank, pay, and other benefits would not be changed. We acknowledge plaintiff's contention that personnel and conditions in the Chicago office would be hostile to him. Such considerations, while hardly negligible on a personal level, are not concrete enough to trigger a Title VII claim. See e.g., Harlston v. McDonnell Douglas Corp., 37 F.3d 379 (8th Cir. 1994). Montandon v. Farmland Industries, Inc., 116 F.3d 355 (8th Cir. 1997).

Regarding the disclosures by Ron Holmes, the District Court held that the ATF had provided legitimate, non-retaliatory reasons for the disclosures, and that Mr. Hoffman had offered no substantial evidence to rebut as pretextual those reasons. We agree.

The purpose of both the memorandum and the statements made to Mr. Liebenstein, according to the ATF, was to keep other law-enforcement personnel informed of security risks in dealing with motorcycle gangs. The memorandum was designed to provide information to agents in the field about the increased criminal activity of motorcycle organizations and, in particular, efforts by motorcycle gangs to derive information about law-enforcement activities by associating with current or former law-enforcement officers. The memorandum contained nine examples of federal, state, and local law-enforcement officers who were suspected to have associated with motorcycle gangs, although none of the individuals was mentioned by name. One of the individuals was Mr. Hoffman, and we accept his claim that those who read the memorandum would recognize that he was the person referred to.

The disclosures made to Mr. Liebenstein were made for substantially the same reasons. Mr. Liebenstein testified that he called Mr. Holmes, a specialist in motorcycle gangs, specifically to ask about recent motorcycle gang activity. In the course of the conversation, Mr. Liebenstein asked Mr. Holmes whether he had heard anything about Mr. Hoffman. Mr. Holmes said that Milwaukee police officers had observed Mr.

Hoffman associating with members of the Outlaw Motorcycle Club. The information was provided to a fellow law enforcement officer in an effort to be cooperative, and, when used for official purposes, we see nothing inappropriate or improper about an exchange of information of this sort. Indeed, this is precisely the sort of information law-enforcement officers must share in order to protect the integrity of criminal investigations, as well as to ensure their own personal safety.

Mr. Hoffman argues that he presented evidence showing that the reasons offered by the ATF for the disclosures were a pretext for the agency's retaliation against him, and that the District Court improperly weighed the evidence. He alleges that the information given to Mr. Holmes by the Milwaukee police was similar to information given previously by the same officers, later proved to be false, that Mr. Holmes knew that, and that he made no effort to verify the more recent information. Mr. Hoffman also alleges that pretext may be inferred from the high level of animosity exhibited by Mr. Holmes during the conversation. A reasonable inference, in Mr. Hoffman's view, is that Mr. Holmes was so frustrated at him for supporting Ms. Roberts that he targeted Mr. Hoffman for retaliation. In our opinion, these suggested inferences are, on the present record, too tenuous to bear the weight the plaintiff would place upon them. Mr. Holmes's animosity is easily explained by his anger at what he believed to be plaintiff's questionable associations, and perhaps at the plaintiff's previous accusations (unrelated to Title VII) against Mr. Hourihan. The plaintiff was plainly in bad graces at ATF, but we do not think the trier of fact could reasonably find that this situation stemmed in any substantial degree from protected activity.

Finally, with respect to the criminal investigation of Mr. Hoffman by the United States Attorney for the Eastern District of Wisconsin, we agree with the District Court that the investigation was not an adverse employment action. First, as the ATF argues, the investigation is a preliminary, and not final, decision. Second, Mr. Hoffman was not even aware of the investigation until he was told about it by the government during discovery in this lawsuit. And, third, despite Mr. Hoffman's argument that the

investigation has prevented him from returning to work as an ATF agent, he has presented no evidence, other than mere assertions, to suggest that the investigation is responsible for any change in the terms or conditions of his employment. We hesitate to approve a rule of law that would make wrongful a criminal investigation not conducted by the employer and supported by at least some evidence of inappropriate association between a law-enforcement officer and a criminal gang.

In addition, Mr. Hoffman has offered no evidence that the ATF's explanation for the investigation is pretextual. The ATF began the investigation, which did not focus initially on Mr. Hoffman, to find the source of information it believed was being leaked to the Outlaws. Locating a person who is leaking sensitive investigative information which may threaten the safety of police officers and others is a legitimate law-enforcement need, and Mr. Hoffman has produced nothing substantial to suggest that the investigation of him was inappropriate under the circumstances.

### III.

Mr. Hoffman alleges that the ATF disclosed information from his personal and EEO files in violation of the Privacy Act, 5 U.S.C. § 552a (1994). There is no merit in this argument, and the claim must fail for several reasons. The District Court's discussion of this issue was extensive, and we have nothing significant to add. Mr. Hoffman has not shown that the briefing document the ATF prepared to defend itself against the allegations contained in the "60 Minutes" program was given to anyone outside the agency, nor to anyone in the agency who did not have a need to know the information. As to Mr. Higgins's letter to the "60 Minutes" journalist, Mr. Hoffman himself had previously provided the same information to the journalist, waiving, in effect, his protection under the Privacy Act. With respect to the disclosures made by Mr. Holmes, it is undisputed that the source of the information was outside the ATF. In order to prevail under the Privacy Act, the information must have been contained in a system of records maintained by the ATF, and there is no evidence that Mr. Holmes

obtained the information he disclosed from any ATF record. <u>Olberding v. United States Department of Defense</u>, 709 F.2d 621 (8th Cir. 1983), is in point. Plaintiff argues the case is wrong, but it is binding on this panel.

IV.

For the reasons we have given, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.