**Nereida CANCEL DE RUGG, Plaintiff,**

v.

**Togo D. WEST, Jr., Secretary of the Army, et al., Defendants.**

**No. Civ. 97–1594(JAF).**

United States District Court,
D. Puerto Rico.

July 10, 2000.

Johnny Rivera–Gonzalez, San Juan, PR, for plaintiff.

Asst. U.S. Attorney Lilliam E. Mendoza–Toro, Guillermo Gil, U.S. Attorney, San Juan, PR, for defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Alleging national origin, gender, and retaliatory discrimination, Plaintiff Nereida Cancel de Rugg filed suit against, inter alia, Defendants Togo West, Secretary of the Army, and William Cohen, Secretary of Defense, for equitable relief and monetary damages pursuant to Title VII, 42 U.S.C. § 2000e–16 (1988).

On September 2, 1998, Defendants, alleging that this court lacked subject-matter jurisdiction over several issues raised in Plaintiff's complaint, moved for partial summary judgment. We granted Defendants' motion on August 6, 1999, on statute

of limitations grounds. Defendants now move to dismiss the complaint in part and for partial summary judgment.

## I.

### Factual Recapitulation and Procedural Synopsis

Since Defendants base their present motion on the same factual predicate as their previous summary judgment motion, we reiterate the factual background here.

Plaintiff worked as a military processing clerk at the San Juan Military Entrance Processing Station of the Department of Defense ("DOD") at the time of her termination. In early 1994, Lt. Lori Hardin became Plaintiff's supervisor and "intermediate rater" for purposes of her annual evaluations. Then in early May 1995, Sgt. Danny Acosta became Plaintiff's immediate supervisor and new "rater". Sgt. Acosta reported directly to Lt. Hardin.

On May 19, 1995, Plaintiff received a Job Performance Expectation letter from Sgt. Acosta regarding the DOD's expectations of Plaintiff's job performance. In the letter, Sgt. Acosta urged Plaintiff to curtail her use of Spanish while on the job and complained about certain deficiencies in Plaintiff's work. Plaintiff alleges that the letter was a threatening, unsubstantiated reprimand that was at odds with her favorable 1994 and 1995 evaluations.

As a result of the letter and Plaintiff's perception that Sgt. Acosta and Lt. Hardin were treating her harshly, Plaintiff approached a DOD Equal Employment Opportunity ("EEO") Counselor, alleging that her employer had discriminated against her on the basis of sex and national origin ("First EEO Complaint"). Following an initial investigation, the parties reached an agreement regarding the First EEO Complaint on August 24, 1995. In the letter of agreement, Defendants agreed to:

a. Ensure a work environment of respect and free of harassment;

b. Issue a Verbal English/Spanish Language Policy Statement that reflects the ability to provide clarification in Spanish during in-processing and permits the speaking of Spanish during other than official business;

c. Rescind the Job Performance Expectation letter of May 1995;

d. Permit [Plaintiff] to have a witness (Mr. Pablo Peneiro or Mr. Ricardo Pinolay) present if and when [she] receive[s] verbal counseling; and

e. Ensure no retaliation because of [Plaintiff's] involvement with [the] EEO.

("EEO Agreement"). *See Docket Document No. 21, app. 2.*

In or about September 1995, MSgt. Michael Hayden replaced Sgt. Acosta as Plaintiff's immediate supervisor and rater. Plaintiff alleges that following the EEO Agreement, Lt. Hardin and MSgt. Hayden retaliated against her for having lodged the First EEO Complaint. Plaintiff states that the retaliatory measures included verbal harassment; a poor performance evaluation written by MSgt. Hayden; and a fabricated sexual harassment complaint. Additionally, Plaintiff alleges that as a result of Defendants' retaliatory scheme, MSgt. Hayden and Lt. Hardin failed to provide her with a written performance plan and mid-year counseling as required by Army regulations, and held her to a higher work standard than her male, non-Puerto Rican counterparts.

On April 8, 1996, Plaintiff received a memorandum from MSgt. Hayden which placed her on a performance improvement plan ("PIP") for sixty calendar days. At the end of the sixty-day period, on June 25, 1996, Plaintiff received another negative performance evaluation from MSgt. Hayden and Lt. Hardin.

On May 28, 1996, Commander Signe T. Johnson suspended Plaintiff for fourteen days without pay, from June 9 to June 22, 1996, for sexually harassing Sgt. Alfredo Rubio, knowingly making false statements

regarding an applicant, refusing to obey orders, acting discourteously, and delaying the completion of orders. Commander Johnson advised Plaintiff of her right to grieve the fourteen-day suspension or file an EEO complaint if she believed the suspension was based on illegal discrimination.

On June 12, 1996, Plaintiff filed a second complaint with the EEO office alleging discrimination based on sex and national origin, and retaliation for the filing of her First EEO Complaint ("Second EEO Complaint"). In total, Plaintiff requested that the DOD investigate her allegations that she:

1. Received a job performance expectation letter;

2. Was harassed by her superiors as they intentionally looked for technical flaws in her work;

3. Was restricted from speaking Spanish at work;

4. Received an unsuccessful performance evaluation;

5. Was charged with sexual harassment allegations; and

6. Was suspended for fourteen days.

On July 26, 1996, the EEO agreed to investigate these issues.

On August 5, 1996, Defendants terminated Plaintiff's employment as a Military Personnel Clerk.

On September 4, 1996, Plaintiff filed a third EEO complaint alleging that Defendants discriminated against her based on her national origin and sex, and that they dismissed her in retaliation for having filed her First and Second EEO Complaints ("Third EEO Complaint").

On October 9, 1996, the EEO informed Plaintiff that it would investigate the Third EEO Complaint. *See Docket Document No. 21, app. 8.*

On October 18, 1996, the EEO revised the July 26, 1996 letter and informed Plaintiff that it would investigate only issues 3, 4, and 5 of the Second EEO Complaint. *See id. at app. 5.* Then, on October 23, 1996, the EEO issued another letter informing Plaintiff that the EEO would investigate only issues 4, 5, and 6. Thus, with respect to Plaintiff's Second EEO Complaint, the EEO agreed to investigate only the issues of Plaintiff's unsuccessful performance evaluation, the sexual harassment complaint, and the fourteen-day suspension.

On December 5–6, 1996, the DOD's Office of Complaints Investigation ("OCI") investigated the Second and Third EEO Complaints. On or around February 27, 1997, the OCI investigator issued two Reports of Investigation based on its December 5–6, 1996 administrative hearing. Regarding the Second EEO Complaint, the OCI investigator found that the evidence did not support Plaintiff's complaint of discrimination. *See Docket Document No. 21, app. 9.* Regarding the Third EEO Complaint, the OCI investigator found that Plaintiff's dismissal was not the result of Defendants' unlawful discrimination. *See id. at app. 10.*

On March 24, 1997, the EEO sent Plaintiff's attorney a letter stating that Plaintiff had the right to request a hearing or a final Army decision within thirty days from receipt of the enclosed Reports of Investigation for the Second and Third EEO Complaints. *See* 29 C.F.R. § 1614.108(f) (2000).[1]

On May 2, 1997, the EEO sent Plaintiff's attorney a letter stating that the Third EEO Complaint had been forwarded to the Department of the Army for a final deci-

---

1. Section 1614.108(f) provides, in relevant part:

> [T]he agency shall notify the complainant that the investigation has been completed, shall provide the complainant with a copy of the investigative file, and shall notify the complainant that, within 30 days of receipt of the investigative file, the complainant has the right to request a hearing before an administrative judge or may receive an immediate final decision....

29 C.F.R. § 1614.108(f).

sion. The letter further stated that Plaintiff had a right to appeal the final decision to the Merit Systems Protection Board ("MSPB")[2] within twenty days; or, alternatively, she could file a civil action in the appropriate district court within thirty days of receiving the final agency decision. See 29 C.F.R. §§ 1614.302(d)(1)(ii) (2000);[3] 1614.302(d)(3) (2000);[4] 1614.310(a) (2000).[5] Finally, the letter stated that if the Army has not issued a final decision on the complaint, Plaintiff may file a civil action after one-hundred and twenty days from the date Plaintiff filed the formal complaint.

On April 22, 1997, Plaintiff filed the present complaint essentially alleging the same claims that she asserted in her previous administrative complaints. To wit, she alleges that she (1) received a poor job performance expectation letter; (2) was harassed when her superiors intentionally looked for technical flaws in her work; (3) was restricted from speaking Spanish at work; (4) received an unsuccessful performance evaluation; (5) was charged with sexual harassment; and (6) was suspended for fourteen days. See Docket Documents

Nos. 1, 45. Plaintiff requests: (1) a declaratory judgment that the alleged acts violated Title VII; (2) preliminary and permanent injunctions directing Defendants to reinstate her in her previous position and compensate her for lost remuneration, enjoining Defendants from further discrimination against her, and requiring Defendants to establish a non-hostile work environment; (3) compensatory damages for lost remuneration and other alleged harm; and (4) attorneys' fees.

On September 2, 1998, Defendants moved for partial summary judgment alleging that Plaintiff failed to exhaust her administrative remedies with respect to: (1) the Job Performance Expectation letter of May 1995; (2) the restriction placed upon Plaintiff which prohibited her from speaking Spanish at work; and (3) Plaintiff's supervisors' alleged harassment of her by intentionally looking for technical flaws in her work ("First Three Issues"). Defendants maintained that the EEO Agreement resolved the First Three Issues and that they were not a part of the

**2.** See generally Butler v. West, 164 F.3d 634, 638 (D.C.Cir.1999) (discussing the procedural background for the prosecution of "mixed cases"—a non-discrimination claim coupled with a discrimination claim); see also 29 C.F.R. § 1614.302(a)(1) (2000); 5 U.S.C. § 7702 (1996) (statutory provisions addressing procedures for a mixed case).

**3.** Section 1614.302(d)(1)(ii) provides:

(d) Procedures for agency processing of mixed case complaints. When a complainant elects to proceed initially under this part rather than with the MSPB, the procedures set forth in subpart A shall govern the processing of the mixed case complaint with the following exceptions:

(1) At the time the agency advises a complainant of the acceptance of a mixed case complaint, it shall also advise the complainant that:
***
(ii) If the complainant is dissatisfied with the agency's final decision on the mixed case complaint, the complainant may appeal the matter to the MSPB (not EEOC) within 30 days of receipt of the agency's final decision....
29 C.F.R. § 1614.302(d)(1)(ii).

**4.** Section 1615.302(d)(3) provides:

(d) Procedures for agency processing of mixed case complaints. When a complainant elects to proceed initially under this part rather than with the MSPB, the procedures set forth in subpart A shall govern the processing of the mixed case complaint with the following exceptions:
***
(3) At the time that the agency issues its final decision on a mixed case complaint, the agency shall advise the complainant of the right to appeal the matter to the MSPB (not EEOC) within 30 days of receipt and of the right to file a civil action as provided at § 1614.310(a).
29 C.F.R. § 1614.302(d)(3).

**5.** Section 1614.310 provides:

An individual who has a complaint processed pursuant to 5 C.F.R. part 1201, subpart E or this subpart is authorized by 5 U.S.C. § 7702 to file a civil action in an appropriate United States District Court:
(a) Within 30 days of receipt of a final decision issued by an agency on a complaint unless an appeal is filed with the MSPB....
29 C.F.R. § 1614.310(a).

OCI administrative hearing held on December 5-6, 1996. Defendants asserted that when the EEO rejected the First Three Issues and agreed only to investigate the unsuccessful performance evaluation, the sexual harassment complaint, and the fourteen-day suspension, the EEO essentially issued a final decision regarding the First Three Issues. Moreover, Defendants contended that since Plaintiff never appealed the EEO's decision not to investigate these claims to the EEOC pursuant to 29 C.F.R. § 1614.504, she was precluded from raising them in her civil action in federal district court.

On August 6, 1999, we granted Defendants' motion for partial summary judgment but on different grounds. We found that Title VII's statutory limitation barred Plaintiff's claims with regard to the First Three Issues and that she had not stated any facts which would equitably toll the limitations period. *See Docket Document No. 45.*

Defendants, asserting three principal arguments, now move to dismiss Plaintiff's complaint in part and for partial summary judgment. First, Defendants contend that Plaintiff cannot establish a prima-facie case of Title VII discrimination with regard to the unsuccessful performance evaluation Plaintiff received and the investigation of the charges of sexual harassment against her because these acts, as intermediate steps toward final employment decisions, do not constitute adverse employment actions. Defendants also maintain that Plaintiff cannot establish a prima-facie case of discrimination concerning her dismissal from employment because she cannot demonstrate that she satisfied Defendants' legitimate performance expectations. Finally, Defendants argue that Plaintiff cannot establish that their proffered reasons for the four alleged employment actions were false and that they were really motivated by discriminatory animus.

In a seventy-nine-page response, Plaintiff refutes Defendants' arguments. Plaintiff first argues that Title VII prohibits not only overt discrimination but also facially neutral employment policies or actions that disparately impact employees from a protected class. Plaintiff also contends, without explanation, that there are genuine issues in her case regarding her ability to satisfy performance expectations and Defendants' alleged infringement of applicable regulations governing the protection of the DOD's civilian personnel. Additionally, Plaintiff maintains that: (1) the investigation of the sexual harassment charges against her constituted an adverse employment action; (2) Defendants failed to counsel her on how to improve her performance or to develop a performance improvement plan; (3) Defendant West, by not generating, disseminating, nor enforcing an appropriate anti-sexual harassment policy, enabled the creation of a hostile working environment in which Plaintiff was required to work; (4) Plaintiff's supervisors intentionally assigned her duties outside her normal scope of work thereby overburdening Plaintiff and increasing the likelihood that she would not be able to perform any responsibility adequately; (5) relatedly, various supervisors conspired through numerous acts to ensure that Plaintiff received an unsatisfactory job approval rating; (6) Defendants devised generally unattainable performance criteria and applied it solely to Plaintiff; and (7) Defendants did not follow procedure correctly in investigating the sexual harassment claim against Plaintiff and, subsequently, sanctioning her.

## II.

### A. *Motion to Dismiss Standard*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him based only on the pleadings for "failure to state a claim upon which relief can be granted ..." FED.R.CIV.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in

favor of the [nonmovant]." *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether plaintiffs have stated a claim under which relief can be granted.

### B. *Summary Judgement Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see Lipsett v. University of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998) This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

### A. *Unsatisfactory Performance Evaluations and Investigation of Sexual Harassment*

Title VII provides that it is unlawful for an employer to discharge any individual or otherwise discriminate against him on the

basis of his national origin.[6] A plaintiff can utilize direct evidence to demonstrate that defendants discriminated against her. *See Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir.1990) ("Direct evidence is evidence which, in an of itself, shows discriminatory animus."). Where there is no direct evidence or "smoking gun" demonstrating that the employer's bias against her employee's sex or national origin motivated her actions, the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provided the legal framework with which to analyze the issue. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (applying the *McDonnell Douglas* formula to a Title VII discrimination claim); *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 420 (1st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework").

Here, neither party asserts that there is direct evidence or a "smoking gun" which demonstrates Defendants' alleged discriminatory animus against Plaintiff. Therefore, we consider the multi-factor test established by the Supreme Court in *McDonnell Douglas*.

The *McDonnell Douglas* framework requires that a plaintiff establish a prima facie case by demonstrating that she: (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another individual with similar skills and qualifications. *See DeNovellis v. Shalala*,

124 F.3d 298, 307 (1st Cir.1997); *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir.1993); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). Once the plaintiff establishes the prima facie case, there is a presumption that the employer unlawfully discriminated against her. *See Vega*, 3 F.3d at 478; *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1110–11 (1st Cir.1989). The burden of production then shifts to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *See id.* If the employer meets this burden, the inference of unlawful discrimination is erased, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *See Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 823. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 825. Throughout this analysis, the plaintiff maintains the burden of proving that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1335 (1st Cir.1988). Thus, federal law "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's [national origin or sex]." *Id.* at 1341.

---

**6.** Title VII of the Civil Rights Act of 1964 provides, in relevant part:

It shall be an unlawful employment practice for an employer—

A. [t]o discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex, or national origin; or

B. to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex, or national origin.

42 U.S.C. § 2000e–2(a) (1988).

In the present case, Defendants argue that the unsuccessful performance evaluations which Plaintiff received and the investigation of the charges of sexual harassment against her are not adverse employment actions. Defendants further argue that these actions were intermediate steps toward final employment decisions. *See Docket Document No. 70* (quoting *Blackie v. State of Me.*, 75 F.3d 716 (1st Cir.1996)). Plaintiff refutes Defendants' contention, asserting that Defendants did not follow the correct procedure in investigating the sexual harassment claim against Plaintiff nor in her subsequent sanctioning.

■ The First Circuit in *Blackie* established a standard for identifying a materially adverse employment action. *See Blackie*, 75 F.3d at 725–26. An employment action is materially adverse if it:

(1) take[s] something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or

(2) withhold[s] from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service.

*Id.* (citations omitted). Although *Blackie* originated in a Fair Labor Standards Act suit which alleged retaliatory discrimination, its standard for finding materially adverse employment action applies to Title VII suits for national origin discrimination. *See DeNovellis*, 124 F.3d at 306 (citing *Blackie* standard for its finding of adverse employment action in a Title VII suit for national origin discrimination). Similarly, we find that the *Blackie* standard applies for finding alleged gender and retaliatory discrimination under Title VII. *Cf. Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49–50 (1st Cir.1999) (extending *Blackie* standard to whistleblower provision of Federal Credit Union Act); *Vargas v. Puerto Rican–American Ins. Co.*, 52 F.Supp.2d 305, 312 (D.P.R.1999) (extending *Blackie* standard to Age Discrimination in Employment Act).

■ Here, Plaintiff received an unsatisfactory performance evaluation on April 8, 1996, and another on June 25, 1996. The April 8 evaluation was accompanied by a memorandum which notified her that, as a result of her poor performance, her supervisors were placing her on a Performance Improvement Plan ("PIP") for sixty calendar days. *See Docket Document No. 70, apps. 7, 8.* If at the end of that period she had not brought her performance up to an acceptable level, the memorandum warned of future personnel action, including reassignment, reduction-in-grade, or termination from employment. *See id.* We find that the evaluation itself, since it would be considered in future personnel actions, such as promotions or salary increases, and the accompanying warning constitute adverse employment actions. *See Vargas*, 52 F.Supp.2d at 312–13 (finding that evaluator's conclusion and accompanying warning constituted adverse employment action). Similarly, the memorandum accompanying the June 25 evaluation proposed permanently removing Plaintiff from her position as a result of the second unsuccessful performance evaluation. *See Docket Document No. 70, apps. 9, 10.* We find that this evaluation and proposal clearly fit within the *Blackie* standard, for she was in fact removed from her employ approximately ten days later.

Defendants also assert that the investigation of the sexual harassment claim against Plaintiff was an intermediate step in reaching the decision to suspend her for fourteen days. In response, Plaintiff alleges that several of her supervisors conspired to bring this sexual harassment claim against her and deliberately excluded her from its investigation so as to disparage her character and sully her employment record.

█ The record indicates that a military investigating officer from the DOD conducted a five-day investigation into the allegations of sexual harassment against Plaintiff. *See id.* at *app. 15.* The investigation included extensive interviews with interested parties, including Plaintiff; TSgt. Rubio, the alleged victim; and Plaintiff's co-workers and supervisors. *See id.* Since investigations of personnel charges are not considered adverse employment actions, we accordingly find that the investigation of the charges of sexual harassment against Plaintiff is not an adverse employment action. *See Hoffman v. Rubin,* 193 F.3d 959, 965 (8th Cir.1999) (finding that criminal investigation is not adverse employment action in Title VII case); *Ludwig v. Northwest Airlines, Inc.,* 98 F.Supp.2d 1057, 1069 (D.Minn. 2000); *Watson v. Lucent Tech., Inc.,* 92 F.Supp.2d 1129, 1136 (D.Kan. 2000); *see also Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir.2000) (finding that an investigation in First Amendment case is not adverse employment action) (citations omitted); *Colson v. Grohman,* 174 F.3d 498, 511 (5th Cir.1999) (same); *but see Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 158 (3d Cir.1999) (stating that government investigation constitutes adverse employment action because it can hurt person's employment prospects) (dicta) (citations omitted).

### B. *Termination of Employment*

█ On August 5, 1996, Defendants terminated Plaintiff's employment as a Military Personnel Clerk. Plaintiff subsequently challenged her dismissal as violative of Title VII's anti-discrimination provisions. As we have stated, the *McDonnell Douglas* framework requires that a plaintiff establish a prima facie case of discrimination by demonstrating, inter alia, that she met the employer's legitimate performance expectations. *See DeNovellis,* 124 F.3d at 307. Defendants argue that Plaintiff has failed to meet this prong. They assert that two consecutive supervisors of Plaintiff indicated that she failed to perform in a satisfactory manner, became argumentative when constructively criticized, and refused to correct work-related mistakes which were brought to her attention. *See Docket Document No. 70.* Defendants further contend that since May 1990 the quality of Plaintiff's work product increasingly deteriorated. *See id.*

Plaintiff, on the other hand, argues that Defendants' evaluative criteria were neither legitimate nor expected. She maintains that Lt. Hardin, Plaintiff's supervisor, deliberately assigned her duties which were beyond the scope of her work, such as distributing packets of information to the various military branches and performing quality control. *See Docket Document No. 76.* Plaintiff asserts that she often had to perform these additional assignments after her normal working hours, the extraordinary duties were sufficient to comprise someone's entire work portfolio, and none of her male counterparts carried similarly heavy work loads. *See id.* Plaintiff also contends that, although her supervisors had placed unreasonable time deadlines on both her regularly assigned and extraordinary duties, an objective evaluator would have determined that she largely met her position's performance expectations. *See id.* Moreover, Plaintiff alleges that her supervisors did not properly apprise her of their performance expectations for her, nor did they counsel her on how to improve her job performance, as required by their office guidelines and as her supervisors alleged that they did. *See Docket Documents Nos. 70, 76.*

After reviewing the record, we find that Plaintiff has demonstrated that a genuine issue of material fact exists with regard to whether she met Defendants' legitimate performance expectations. *See Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998) (stating that section 42 U.S.C. § 2000e–3 (1988) encompasses numerous employment actions as adverse, including unwarranted

negative job appraisals) (citations omitted); *see also Kim v. Nash Finch Co.*, 123 F.3d 1046, 1061 (8th Cir.1997) (finding that negative performance evaluations, when combined with other acts, constitute adverse employment actions). Accordingly, summary judgment is inappropriate at this time. *See* FED.R.CIV.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

### C. Reasons for Defendants' Actions: Legitimate or Pretext?

■ Defendants contend that Plaintiff cannot demonstrate that the reasons which underlie their personnel actions against her were mere pretext which disguise their discriminatory motive.

Defendants' assertions involve the last stage of the *McDonnell Douglas* framework. Once an employer-defendant has rebutted the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must show that the employer's alleged justification is a mere pretext for discrimination. *See Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 823. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 825. The plaintiff carries the ultimate burden of persuasion in this process. *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38 (1st Cir.1999) (citations omitted). "This burden is often broken into two separate tasks. The plaintiff must present sufficient evidence to show both that 'the employer's articulated reason for [the adverse employment action] is a pretext' and that 'the true reason is discriminatory.' " *Id.* at 56 (quoting *Udo v. Tomes*, 54 F.3d 9, 13 (1st Cir.1995)). However, the plaintiff need not present additional evidence beyond that required to demonstrate pretext or

the falsity of defendant's alleged reasons. *See Rodriguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 22 n. 5 (1st Cir.1999) (citation omitted). The plaintiff may use the same evidence to support both a conclusion of pretext and discriminatory motive, "provided that the evidence is adequate to enable a rational fact-finder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Id.; see also Eastman Kodak*, 183 F.3d at 57.

■ First, we must ascertain whether Defendants have asserted a nondiscriminatory reason for their personnel actions. *See Vega*, 3 F.3d at 478; *Mohawk Rubber Co.*, 872 F.2d at 1104–11. Throughout this analysis, we are cognizant that " 'courts may not sit as super personnel departments, assessing the merits—or even the rationality of employers' nondiscriminatory business decisions.' " *Rodriguez–Cuervos*, 181 F.3d at 22 (quoting *Mesnick*, 950 F.2d at 825).

Defendants assert that the investigation of the sexual harassment charge against Plaintiff was conducted by a non-interested military investigator pursuant to Army Regulation 15–6. *See Docket Document No. 70.* Plaintiff, however, challenges not only the investigation but also the charge itself as motivated by Defendants' discrimination. *See Docket Document No. 76.* Although Defendants do not explicitly argue that TSgt. Rubio acted independently when filing his sexual harassment complaint against Plaintiff, they intimate that he did so and that he had a reasonable basis for filing the complaint. *See Docket Document No. 70* and *app. 13.* Sgt. Rubio testified before Investigator Bradley that Plaintiff, on several occasions and after being told that her advances were unwelcomed, hugged, kissed, and patted him. *See id.* We find that this testimony substantiates Defendants assertions that they had a nondiscriminatory reason for the charge of sexual harassment against Plaintiff.

With regard to Plaintiff's fourteen-day suspension, Defendants contend that she was suspended because the investigator found that Plaintiff had sexually harassed Sgt. Rubio. *See Docket Document No. 70 and apps. 17, 18.* Defendants also maintained that Plaintiff was suspended because she allegedly had made false statements regarding an applicant who she had processed in the course of her work, had repeatedly refused a supervisor's order to relinquish official copies of documents, had been consistently discourteous and unmannerly in dealing with co-workers and supervisors, and had routinely failed to perform her assigned duties in a timely manner. *See id.* Accordingly, pursuant to Army Regulation 690–700, Chapter 751, Defendants argue that were authorized to suspend Plaintiff for these alleged infractions. *See id.* We find that the record supports Defendants' contentions with regard to the suspension.

Penultimately, Defendants maintain that Plaintiff's supervisors based her two unsuccessful performance appraisals on Plaintiff's failure to perform her work duties satisfactorily. Furthermore, they contend that she ignored repeated counseling on how to improve her performance and, instead, became argumentative when confronted by her supervisors. *See Docket Document No. 70.* The record indicates that her supervisors provided exact data as to Plaintiff's performance, including, but not limited to, that she spent an additional ten to fifteen minutes per reserve packet above the office average to prepare and mail them and, consequently, that forty-four percent of the packets which she mailed were late. *See id. at apps. 6, 9.* Due to the preciseness of this information and the fact that Plaintiff's supervisors apparently followed standard procedure for evaluating subordinates when assessing her performance, we find that Defendants have articulated a legitimate, non-discriminatory reason for the two unsuccessful performance evaluations of Plaintiff.

Lastly, Defendants contend that they terminated Plaintiff's employment with the San Juan Military Entrance Processing Station ("SJ–MEPS") because of her failure to meet performance goals as established by her supervisors. Specifically, the August 2, 1996 letter of removal stated that during the probationary period of April 1 through June 7, 1996, Plaintiff failed to meet the "Minimally Successful" level of technical competence, did not process military applicants in a timely manner, neglected to send Reserve records to the Commander of the SJ–MEPS as he requested, and mailed forty-four percent of Reserve Records late. *See id. at app. 12.* We find that these are legitimate, non-discriminatory reasons for terminating Plaintiff. *See Vidal–Soto v. Banco Bilbao Vizcaya–Puerto Rico,* 4 F.Supp.2d 60, 64 (D.P.R.1998) (finding poor performance evaluations were legitimate reasons for terminating plaintiff).

Having found that Defendants' articulated reasons for the adverse employment actions against Plaintiff to be sound, the initial presumption of discrimination evaporates from the case, *see St. Mary's Honor Center,* 509 U.S. at 510–11, 113 S.Ct. 2742, and Plaintiff has the ultimate burden of proving discrimination. She must produce evidence to create a genuine issue of material fact with regard to Defendants' articulated reason and their alleged discriminatory animus. Although she may utilize the same evidence to support these showings, the evidence must be sufficient to allow a reasonable fact-finder to conclude that both disparate treatment occurred and either national origin, gender, or retaliation motivated the difference in treatment. *See Eastman Kodak,* 183 F.3d at 62.

With regard to the charge of sexual harassment against her, Plaintiff asserts various incidents which allegedly demonstrate that she did not receive due process in the investigation of the charge. She also maintains that (1) as a sixty-year old, happily married woman, she would not have been interested in a man half her

age; (2) TSgt. Rubio, the alleged victim of sexual harassment, did not work in the same location as Plaintiff; and (3) there was no hierarchical or close working relationship between her and TSgt. Rubio. *See Docket Document No. 76.* Consequently, Plaintiff concludes that the charge resulted from a "monstrous, ugly, and offensive conspiracy by persons miffed that [Plaintiff] had the courage to stand up for her rights. . . ." *Id.* at 72.

Since we have found that the investigation of the sexual harassment charge against Plaintiff did not constitute an adverse employment action, we need not consider those assertions any further. Moreover, even if we assume the veracity of Plaintiff's three other contentions, they do not suffice to demonstrate disparate treatment in the bringing of a sexual harassment claim. At most, Plaintiff's assertions go to disputing Sgt. Rubio's allegations against her rather than to demonstrating that Sgt. Rubio brought the claim against her for discriminatory reasons. Furthermore, the record indicates that Sgt. Rubio did not consult with Plaintiff's supervisors on whether to bring the sexual harassment claim, nor did he have any knowledge of Plaintiff's previous EEO complaint against them. *See Docket Document No. 70, app. 13, pp. 158–59.* Hence, Plaintiff's bald assertions of disparate treatment, allegedly born out of a conspiracy by her supervisors, lack the requisite evidence to survive summary judgment. *Cf. Gilbert v. City of Cambridge,* 932 F.2d 51, 62 (1st Cir.1991) (stating that court reviewing plaintiff's pleadings " 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation' ") (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990)); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (same).

Plaintiff also challenges the sexual harassment charge against her which formed part of the grounds for her four-teen-day suspension. *See Docket Document No. 70, app. 17.* Plaintiff alleges that the investigator did not find "any evidence to substantiate any of Rubio's grotesque allegations," and, thus, her supervisors sanctioned her "without a scintilla of evidence" against her. *See Docket Document No. 76, pp. 70–71.* Plaintiff does not assert specifically other facts which would raise a genuine issue of material fact with regard to the grounds for the suspension. *See id.* In general terms, however, she bemoans the alleged conspiracy against her and accuses her superiors of nurturing a hostile work environment. *See id.* at 32–33, 42–44, 73–76. Again, bald assertions without supporting evidence simply are not enough to raise a genuine issue of material fact. She has also failed to proffer sufficient facts to establish a casual connection between her protected conducted, i.e., filing the three EEO complaints, and the sexual harassment charge against her. *See Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (stating that plaintiff must demonstrate causal connection to establish prima-facie case of retaliation).

Next, Plaintiff alleges that Defendants' negative evaluation of her work performance stems from their discriminatory animus. She claims that Defendants: (1) assigned her additional tasks which were not necessarily given to her male, primarily non-Puerto Rican co-workers; (2) expected her to meet a time schedule, which did not apply to these same co-workers, for accomplishing her assigned duties; and (3) contrary to their assertions, failed to counsel her on how to improve her performance. *See Docket Document No. 76.* As a result, Plaintiff argues that Defendants did not assess her work product fairly. *See id.* These assertions, particularly the first two, if true, would help Plaintiff carry her burden of demonstrating disparate impact and discriminatory motive. *See Thomas v. Eastman Kodak,* 183 F.3d at 63 (finding that jury could conclude that unlawful bias motivated supervisor's disparate treatment of plaintiff as compared to her treatment of co-workers). Thus, we

find that a reasonable jury could conclude that the results of these two performance evaluations reflect Defendants' discrimination against Plaintiff.

Lastly, Plaintiff alleges the same factual predicates as the ones which she forwarded for the performance evaluations arguments to show that Defendants discriminated against her when they terminated her employment with SJ–MEPS. *See Docket Document No. 76.* Since Defendants relied upon these evaluations in deciding to remove Plaintiff from her position, *see Docket Document No. 70, app. 12,* there is a genuine issue of material fact with regard to the dismissal as well. Supporting our finding is the fact that Defendants rated Plaintiff as a "success" in meeting three of the four work standards for which they evaluated her on June 25, 1996, and yet Defendants concluded that her overall performance was "unsuccessful." *See id. at app. 9.* Defendants' conclusion strikes us as questionable given the law of averages and given that, by Defendants' own reckoning, Plaintiff had improved markedly over the previous three-month period. *Cf. Taylor v. Runyon,* 175 F.3d 861, 867 (11th Cir.1999) (stating that judgment as a matter of law is precluded when plaintiff has cast doubt on employer's asserted reasons for adverse employment action).

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** summary judgment with regard to the sexual harassment charge against Plaintiff and the fourteen-day suspension, but **DENY** it with regard to the two performance evaluations and her permanent dismissal from employment. Trial will be scheduled for these remaining issues, without prejudice of future *brevis* disposition in the context of trial.

**IT IS SO ORDERED.**